Peter VALLE, Plaintiff-Appellee,

v.

JOINT PLUMBING INDUSTRY BOARD (Local 2, U.A.); Harvey B. Rehner, John J. Murray, Lawrence Felder, and Morris Olshina, Individually and in their capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary, respectively, and Trustees Individually and in their capacities as Trustees, Defendants-Appellants.

Hilda FRIEDLANDER, as Executrix for the Estate of Arthur Friedlander, Deceased, Plaintiff-Appellee,

v.

JOINT PLUMBING INDUSTRY BOARD (Local 2, U.A.); Harvey Rehner, John J. Murray, Lawrence Felder, and Morris Olshina, Individually and in their capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary, respectively; Louis Desiderio, Morris Olshina, William Greenblatt, Leonard X. Farbman, Lawrence Felder, and William Gross, Individually and in their capacities as Trustees of the Joint Plumbing Industry Board Pension Fund; and Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, John J. Murray, Individually and in his capacity as President, Defendants-Appellants.

Louis KRUPKA, Plaintiff-Appellee,

v.

JOINT PLUMBING INDUSTRY BOARD (Local 2, U.A.); Harvey Rehner, John J. Murray, Lawrence Felder, and Morris Olshina, Individually and in their capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary, respectively; Louis Desiderio, Morris Olshina, William Greenblatt, Leonard X. Farbman, Lawrence Felder, and William Gross, Individually and in their capacities as Trustees of the Joint Plumbing Industry Board Pension Fund; and Local Union No. 2 of the United Associ-

ation of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry; John J. Murray, Individually and in his capacity as President, Defendants-Appellants.

Nos. 540, 538 and 539, Dockets 79–7616, 79–7612 and 79–7614.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1980.

Decided April 11, 1980.

Harold Skovronsky, Brooklyn, N.Y. (Schoffman & Skovronsky, Brooklyn, N.Y., on the brief), for plaintiffs-appellees.

Stephen J. Smirti, Jr., Garden City, N.Y. (Robert A. Kennedy, Richard L. O'Hara, Colleran, O'Hara & Kennedy, P. C., Garden City, N.Y., on the brief), for defendants-appellants.

Before MULLIGAN, Van GRAAFEI-LAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The Joint Plumbing Industry Board, Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, and the individual defendants appeal from three judgments entered in the United States District Court for the Eastern District of New York (Jack B. Weinstein, *Judge*), ordering payment of past and future pension benefits to plaintiffs Peter Valle, Hilda Friedlander (as Executrix) and Louis Krupka. These unconsolidated appeals, along with three others, were argued together in this Court [1] and raise the question whether

---

1. Also argued were *Agro v. Joint Plumbing Industry Board*, 2 Cir., 623 F.2d 207, No. 79 7553, *Denmark v. Jarcho*, No. 79–7620, and *Indursky v. Joint Plumbing Industry Board*, No. 79–7398, each of which is decided today by separate opinion or order.

certain amendments to rules of eligibility for pension benefits adopted by the defendants, imposing a requirement that a participant have worked fifteen consecutive years for contributing employers immediately prior to his application for benefits, were arbitrary and capricious as applied to Valle, Krupka, and plaintiff Hilda Friedlander's deceased husband Arthur Friedlander ("Friedlander").[2] The defendants contest the district court's determination that plaintiffs are entitled to pension benefits and, in addition, allege various errors in the computation of benefits.

For the reasons set forth below, we find that the plaintiffs are entitled to pension benefits and we affirm so much of each judgment as awarded past and future pension benefits; we vacate so much of each judgment as awarded interest from the date of application for benefits, and remand for clarification or further consideration; and we vacate so much of the judgment in favor of Mrs. Friedlander as awarded death benefits and remand for further consideration.

## I

### A. The Pension Plan and Its Amendments

Local 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry (the "Union") was formed in 1938. In 1950, the Union and the Association of Contracting Plumbers of the City of New York entered into a collective bargaining agreement which provided for the establishment of a pension fund. The Plumbing Industry Pension Fund (the "Fund") and the Plumbing Industry Board (the "Board") were formally created in 1952 by Agreement and Declaration of Trust. The Fund was created for the benefit of employees under the authority of § 302 of the Labor Management Relations Act, 29 U.S.C. § 186(c)(5) (1976), and was to be funded by employer contributions and administered by an equal number of Union and employer-designated trustees. The trustees were authorized to make, amend or repeal such rules and regulations of the Plumbing Industry Board Pension Plan (the "Plan") as they deemed necessary to carry out the provisions of the Trust Agreement.

The initial eligibility requirements, promulgated in 1952, were as follows:

(A) attainment of 65 years of age;

(B) membership in good standing of the Union for at least 15 years;

(C) membership in good standing of the Union for at least 5 consecutive years immediately preceding application for benefits;

(D) employment by a contributing employer in each of the 2 years immediately preceding the application (or employment as a salaried Union officer for that period), provided, however, that the 2-year requirement could be waived because of illness or disability;

(E) at least 1250 working days of employment at the plumbing trade during membership in the Union.

The amount of the monthly pension under the 1952 plan was set at $1 for each year, to a maximum of 30, of Union membership.

The eligibility requirements were set out in a booklet distributed to Union members during the early 1960's. The booklet also stated that for purposes of satisfying the 1250-day requirement of section (E) applicants would be given credit for employment by a plumbing contractor prior to establishment of the benefit plan.

Thereafter the eligibility requirements of the Plan were amended on several occasions. In 1963, the rules were amended to make eligibility independent of membership in the Union. Conditions (B) and (C) of the Plan, which had required 15 years' Union membership with 5 consecutive years immediately preceding application, were deleted.[3]

---

2. Arthur Friedlander was the original plaintiff in No. 79–7612. When he died, his widow, as executrix of his estate, was substituted as plaintiff.

3. According to the testimony of defendant Morris Olshina, executive secretary of the Board, the deletion was made in response to an NLRB ruling that the predication of eligibility for pen-

Subsection (E) was revised to require that the 1250 days of employment in the plumbing trade occur during the period of contributory employment rather than during membership in the Union. Despite the deletion of the Union membership requirement for eligibility, the level of benefits to which a participant was entitled continued to depend on how many years he had been a Union member.

The rules of eligibility were amended again in 1966. Conditions (D) and (E) were replaced by the requirement that the applicant have been a participant in the Plan for at least 15 consecutive years immediately prior to application, during which period employer contributions for the applicant must have been made to the Fund for at least 1250 days. Regular retirement age remained at 65, but a provision was introduced for early retirement at age 60. The level of benefits upon regular retirement continued to be dependent on the length of Union membership.

In 1968 the age for regular retirement was lowered from 65 to 64. And in 1969 the age was further lowered from 64 to 62.

In 1971, the rules were amended again. An alternative to the 1966 amendment's 15-year requirement was introduced: an applicant would be eligible for a pension if he had a total of 15 years "unbroken benefit service." "Benefit service" was defined to include various periods of service for contributing employers,[4] and a break was deemed to have occurred if, in any period of three consecutive calendar years, the applicant did not work at least 70 days in one

year or 35 days in each of two years. The 1971 amendments also changed the method of calculation of benefits for those who took regular retirement, linking the level of benefits to years of service for contributing employers rather than years of membership in the Union.

Although defendants assert that these amendments were the subject of discussions at Union meetings from time to time, no contemporaneous notice of any of the amendments was given to Union members or other participants in the Plan. The booklet distributed to Union members in the early 1960's was not updated; new booklets were not distributed until 1972.

### B. The Plaintiffs

#### 1. Valle

Valle was born in 1904 and began work in the plumbing trade in 1920. He joined the Union in 1939. Although Valle claimed to have been in the continuous employ of a contributing employer from the early 1930's until 1969, the district court found, based on Valle's Social Security records, that no contributions were made on his behalf from 1951 through 1956.

From 1957 to 1969, however, Valle worked as a plumber for a contributing employer, and had more than 1700 days of contributory employment during this period. He retired in 1969 because of a disability. For the 13-year period 1957-1969, defendants gave Valle credit for 11¾ years "benefit service" (using the 1971 method of calculation).

---

sion benefits on membership in the Union constituted an unfair labor practice.

**4.** The following definitional sections were added to the rules in 1971:

> *Section 8*
> The term "Continuous Service" as used herein shall mean the period of unbroken service as a participant in the Pension Plan prior to January 1, 1971, during which time he was employed by a contributing employer.
> *Section 9*
> The term "Credited Service" as used herein shall mean the period of unbroken service after January 1, 1950, in which an employee worked at least 140 days for a contributing

employer during each calendar year to receive credit for a year of credited service prorated as follows:

| Days Worked | Credited Service |
|---|---|
| Less than 35 | 0 |
| 35–69 | ¼ |
| 70–104 | ½ |
| 105–139 | ¾ |
| 140 or More | 1 |

*Section 10*
The term "Benefit Service" as used herein shall mean the combination of a participant's "Credited Service" and/or "Continuous Service".

In June 1969, Valle wrote to the Board seeking to apply for pension benefits. In August 1969, the Board wrote him, stating that according to Board records, no contributions had been made for him prior to 1957 and that he therefore did "not meet the eligibility rule which requires 15 years of continuous participation in the Plan next preceding [the] request for pension during which contributions have been made by contributing employers." The letter also stated, "If there are any changes in the future in the rules of eligibility and you should qualify for pension, you will be so notified." In November 1969, Valle's attorney, Abraham Shalo, wrote to the Board insisting that Valle was entitled to a pension under the "Rules of Eligibility," which required only that he " 'be employed by a contributing employer in each of the 2 annual periods next succeeding [sic] the date of his filing . . . .' " [5] In response the Board informed Shalo that in 1966 the Plan had been amended to add the requirement of 15 consecutive years' contributory employment. Neither of the Board's letters in 1969 informed Valle that he might be able to satisfy the 15-year requirement simply by working one day in each of the next two years, or that he might be granted a waiver if he was disabled from further work.

The Board again communicated with Valle in February 1971, by what appears to have been a form letter. The letter stated that the Pension Committee was reviewing pension applications which had not met former rules and "analyzing the possibility of their eligibility under the New Service Credit Plan." It stated that no official action had yet been taken and that Valle would be informed of the Committee's determinations when made.[6]

Valle apparently heard nothing further from the Board until he wrote to the administrator of the Board on September 6, 1974, inquiring as to the status of his pension request. In a response dated September 12, 1974, the executive secretary and the administrator of the Board informed Valle that the Plan required 15 consecutive years of employment with a contributing employer and that Valle did not meet this requirement.

### 2. *Friedlander*

Friedlander was born in 1914. He began work in the plumbing trade in 1938 and joined the Union the same year. Friedlander worked for contributing employers from 1950 through 1963 and for 5 days in 1964, accumulating more than 1750 days of contributory employment. The defendants' records credit him with 13 years of contributory employment for that period. Friedlander then had a break in his employment for contributing employers until about 1974. The reasons were disputed below: Mrs. Friedlander testified that her husband had been unable to get work as a plumber, and hence worked in the catering business while still trying for plumbing jobs; defendants contended that there were many plumbing jobs available and that Friedlander's break must be deemed voluntary. In any event, Friedlander found a plumbing job with a contributing employer in 1974 and continued in that position until early 1975.

In February 1975, Friedlander applied for pension benefits but was told that he did not qualify because he failed to meet the 15 consecutive year employment requirement.

### 3. *Krupka*

Louis Krupka was born in 1909, and began work in the plumbing trade in 1938.

---

5. The 1969 correspondence was apparently Valle's first notice that there had been any amendments to the Plan. Shalo's letter referred to Valle's satisfaction of the Union membership requirements—requirements which were abolished in 1963—and obviously was relying on the 1952 Plan.

6. The full text of the letter was as follows: This is to advise that a meeting of the Pension Committee was held on January 28, 1971 and several hours were spent in discussion with the attorneys and the actuaries on those applications which did not meet the rules and regulations of the former Pension Plan and in analyzing the possibility of their eligibility under the New Service Credit Plan.

Time did not permit the reviewing of all cases and no official action was taken. A future meeting will be held and we will inform you at that time of the Pension Committee findings and/or determination.

He too joined the Union in 1938. Krupka worked as a plumber from 1938 to 1954 and from 1961 through 1973. During the earlier period he accumulated 843 days of contributory service; during the later period of contributory employment he accumulated an additional 1689 days, for a total of more than 2500 contributory days. There was a break in Krupka's contributory employment from 1955 through 1960.

In 1974 Krupka retired because of disability and attempted to apply for a pension. Despite his service with contributing employers during a total of 18 years, and his having worked more than double the required number of contributory days, Krupka's request for a pension was rejected on the ground that he did not meet the 15 consecutive year employment requirement.[7] He was not informed either that he might meet that requirement if he simply worked one day in each of the next two years, or that he might be given a waiver if he was disabled.

### C. The District Court Decisions

Valle, Friedlander and Krupka each commenced suit in May 1978. Valle alleged that the defendants had wilfully and wrongfully denied him pension benefits in violation of the rules of the Plan and in

breach of their fiduciary duties. Friedlander and Krupka sought declarations that the 15 consecutive year service requirements imposed by the 1966 and 1971 amendments were arbitrary and capricious, both per se and as applied, and requested awards of past benefits and declarations of entitlement to future benefits. The district court had jurisdiction of each suit under 29 U.S.C. § 186.[8]

The three actions, although unconsolidated, were tried together. The district court found that Valle, Friedlander and Krupka had all met the requirements for pensions under the 1963 amendments. Although none of these applicants had worked in 15 consecutive years for contributing employers just prior to their pension applications as required under the 1966 amendments,[9] the court found that defendants had not given reasonable notice of the 1966 changes, although the expense of posting a notice would have been minimal, and the defendants conceded that the cost of actually mailing notices to all 4000 Union members would have been only $2000 at a time when the assets of the Fund exceeded $10,000,000. The court found that the defendants also had failed to give Valle and Krupka adequate information as to possible disability waivers or other alternatives that would

---

7. Krupka testified that he went to the Board office in 1974 to apply for benefits and was advised at that time that he was ineligible. No written refusal of Krupka's request appears in the record; however, the defendants do not contest the ripeness of this claim and, by their answer to the complaint, clearly indicated a rejection of the application. Cf. *Kosty v. Lewis*, 319 F.2d 744, 750 (D.C.Cir. 1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964).

8. Section 302(e) of the National Labor Relations Act, 29 U.S.C. § 186(e) (1976), grants federal courts jurisdiction to remedy "structural" defects in pension plans established pursuant to § 302(c)(5), 29 U.S.C. § 186(c)(5) (1976). Subsection (c)(5) prohibits payments by employers to employee representatives unless such payments are "to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer . . . ." 29 U.S.C. § 186(c)(5). In determining whether denial of benefits constitutes a "structural" defect in violation of § 302(c)(5), several courts have sought to determine wheth-

er the rules were arbitrary and capricious as applied. *See, e. g., Knauss v. Gorman*, 583 F.2d 82 (3d Cir. 1978); *Norton v. I.A.M. National Pension Fund*, 553 F.2d 1352 (D.C.Cir. 1977); *Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers*, 542 F.2d 1128 (9th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977); *Kraft v. Felder*, 452 F.Supp. 933 (S.D.N.Y. 1978).

9. Defendants argued unsuccessfully below, as they have in this Court, that even the 1963 amendments had imposed a requirement of at least 15 years' service, although the years need not have been consecutive. This argument had no support in the documents, although it had been accepted by the court in *Huffe v. Jarcho*, 64 A.D.2d 960, 408 N.Y.S.2d 490 (1st Dep't 1978), a decision recently reversed by the New York Court of Appeals, *Huffe v. Jarcho*, 49 N.Y.2d 726, 426 N.Y.S.2d 262, 402 N.E.2d 1163 (1980).

lead to the granting of a pension. Reasoning that the trustees had an obligation to notify the beneficiaries of the Fund of changes in the eligibility requirements for pensions, the court concluded that the trustees' denial of pensions to Valle, Friedlander and Krupka on the basis of the 1966 amendments was arbitrary and capricious.

Judgments were entered ruling that each plaintiff is entitled to pension payments from the Board. Valle was awarded $300 per month in future pension benefits, and $34,376.90 for past benefits, plus interest for the period from June 1969 to entry of judgment. Mrs. Friedlander was awarded $128.80 per month in future pension benefits; $7,084 for past benefits, plus interest from February 1975 to date of judgment; and a Welfare Plan death benefit in the amount of $5,000. Krupka was awarded a monthly pension of $137.50 in future benefits, and $9,212.50 in past benefits, plus interest from February 1974 to date of judgment.

■ Defendants challenge the district court's decisions, contending principally that the 1966 amendments were essential to the preservation of the Pension Fund, that they had no duty to inform beneficiaries of the 1966 amendments, and that the amendments were not arbitrary and capricious as applied to Valle, Friedlander and Krupka.[10]

## II

The administration of a pension trust fund is not an easy task. In addition to accepting responsibility for the care of many millions of dollars of trust assets, the trustee must carefully balance the interests of beneficiaries already retired against those of beneficiaries who are about to retire and participants who will apply for pensions in the more distant future. These interests sometimes appear irreconcilable, particularly in view of the vagaries of the country's economy, including possible recessions, rampant inflation and fluctuations in the fortunes of the particular trade. The economic variables have caused many trustees, including the defendants here, concern that the stability of a pension fund, and hence the ability of the trustees to fulfill fiduciary duties to active members, may be seriously undermined by awards of benefits

---

**10.** As to Valle, defendants also argue that his claim is barred by the statute of limitations. Although defendants did not raise such a defense initially, they were permitted during trial to amend their answer to add the assertion that Valle's claim accrued no later than December 9, 1969 and that his suit, commenced on May 8, 1978, is barred by the six-year statute of limitations provided by New York CPLR § 213. This defense was properly rejected by the district court.

The period within which a trust beneficiary may sue to compel the trustee to perform his duties begins when there has been "a repudiation by the fiduciary which is *clear* and made known to the beneficiaries . . . viewed in the light of the circumstances of the particular case." *In re Barabash*, 31 N.Y.2d 76, 80, 334 N.Y.S.2d 890, 893, 286 N.E.2d 268, 270 (1972) (emphasis in original). *See also Kosty v. Lewis, supra*, 319 F.2d at 750.

Defendants' 1969 letters, had there been no further communications, would have stood as a clear repudiation, sufficient to start the period of limitations. The letter sent to Valle by the Board on February 5, 1971, however, changed the circumstances. It could have been read as altering the 1969 repudiations; and clarification of the Board's position that Valle was not eligible for benefits was not forthcoming until September 12, 1974. Despite defendants' as-

sertion that their February 1971 letter related solely to the possibility of benefits under the 1971 amendments and had no reference to eligibility under the 1966 amendments, it appears cryptic at best, especially when it is realized that this letter preceded *notice* of the 1971 amendments by a year. In any event the district court found that the February 1971 letter "would tend to lull the claimant and his attorney into a belief that it was not necessary to bring the suit." We cannot say that this finding is clearly erroneous.

The defendants having thus lulled Valle into the belief, for a 3½ year period, that a lawsuit might not be necessary, they are equitably estopped from relying on that period in order to invoke the bar of the statute of limitations. *See Erbe v. Lincoln Rochester Trust Co.*, 13 A.D.2d 211, 214 N.Y.S.2d 849 (4th Dep't 1961). *See also Kosty v. Lewis, supra*, 319 F.2d at 750 ("in order to start the statute of limitations running against an express trust, there must be a clear *and continuing* repudiation of the right to trust benefits.") (Emphasis added.) Thus, whether the period of limitations began anew on September 12, 1974, as found by the district court, or was merely tolled from February 5, 1971 to September 12, 1974, Valle's suit was timely commenced.

to beneficiaries who contribute small amounts of money to the fund during the early years of their careers and then leave the trade, only to retire decades later and obtain pension benefits that are disproportionate to their contributions, chiefly due to the larger contributions by active participants.

In order that a trustee have sufficient flexibility to accommodate the various interests of his beneficiaries, it is not uncommon for pension trust agreements to give the trustee power to establish, repeal or modify the requirements for eligibility for pension benefits. Pension fund trustees have used the eligibility provisions in various ways to offset the effects of a changing economy. Some trustees have made eligibility dependent upon retirement after a certain date with a total of, for example, 20 years service in the industry, with one such year immediately prior to retirement.[11] Some have grounded eligibility on 20 years of service within the 30 years immediately prior to retirement.[12] Some have adopted what is called a break-in-service provision, by which a participant loses previously earned years of credit if he does not work for a contributing employer to a specified extent during a given period.[13]

All of these may be reasonable responses to very real present and anticipated economic problems for the pension fund. They are not presumed to be unreasonable, and it is not argued on this appeal, although it was asserted below, that the 1966 amendments in the present case are inherently arbitrary or unreasonable. Indeed the amendments here have been held to be reasonable on their face. *Mitzner v. Jarcho*, 44 N.Y.2d 39, 46–47, 403 N.Y.S.2d 490, 374 N.E.2d 388 (1978).[14] Yet, as the *Mitzner* court recognized, the flexibility allowed to pension fund trustees is limited by principles of fundamental fairness. However reasonable the rules may be on their face, trustees cannot be allowed to apply them in an arbitrary and capricious manner to deny benefits.[15] *Id.* at 47, 403 N.Y.S.2d 490, 374 N.E.2d 388. *Accord, Burroughs v. Board of Trustees of the Pension Trust Fund for Operating Engineers*, 542 F.2d 1128 (9th Cir. 1976); *Kosty v. Lewis*, 319 F.2d 744 (D.C. Cir. 1963), *cert. denied*, 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964).

In determining whether the particular application of a new eligibility requirement was arbitrary and capricious, a number of factors should be considered. They include the extent to which the applicant was an intended beneficiary of the plan, the extent to which the amendment retroactively strips the beneficiary of significant service credit, the extent to which the trustees have notified the employee of these and other changes in rules, and the extent to which there is actuarial justification for denying benefits in the particular case. *See, e. g., Mitzner v. Jarcho, supra.* Exami-

---

11. *See Kosty v. Lewis, supra.*

12. *See Lavella v. Boyle*, 444 F.2d 910 (D.C. Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 84, 30 L.Ed.2d 89 (1971).

13. *See Burroughs v. Board of Trustees, supra; Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir. 1972).

14. *Accord: Harris v. Joint Plumbing Ind. Bd.*, 474 F.Supp. 1284, 1288 (S.D.N.Y.1979), *aff'd by order* (2d Cir. April 14, 1980); *Kraft v. Felder, supra*, 452 F.Supp. 933, 934–35 at n.2. *See also, Burroughs v. Board of Trustees, supra*, 542 F.2d at 1131; *Mosley v. National Maritime Union Pension & Welfare Plan*, 438 F.Supp. 413, 422 at n.8 (E.D.N.Y.1977).

15. Mindful of this Court's past refusals to evaluate under federal law the application of pension eligibility rules to an individual claimant, see, e. g., *Cuff v. Gleason*, 515 F.2d 127, 128 (2d Cir. 1975), we have looked to state law for guidance in determining whether the 1966 amendment was arbitrary and capricious as applied to these three plaintiffs. The plaintiffs contended below that the 1966 amendment was arbitrary and unreasonable per se as well as in its application. The assertions of per se unreasonableness sufficiently allege a "structural defect," *see* note 8, *supra*, to support federal jurisdiction under 29 U.S.C. § 186(e). *Lugo v. Employees Retirement Fund*, 529 F.2d 251 (2d Cir.), *cert. denied*, 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). Even if the claims of arbitrary and capricious application of the amendments to the individual plaintiffs do not independently support federal jurisdiction, exercise of pendent jurisdiction is proper to decide these claims under state law.

nation of these factors leads us to agree with the district court that the 1966 amendments are arbitrary and capricious as applied to Valle, Friedlander and Krupka.

■ It would be difficult to conclude that Valle, Friedlander and Krupka were not intended beneficiaries of the Fund. Each was a Union member for 30 years or more. Each accumulated substantially more than the minimum number (1250) of days of contributory employment—indeed Krupka amassed more than double this number. Each would have been eligible for a pension under the 1963 amendments. Each worked very substantial periods for contributing employers at the end of, or relatively late in, their careers. There was no showing by defendants that there was any sound actuarial factor requiring the denial of benefits to any of the three. And each was unfairly prejudiced by the actions and inactions of the trustees.

Valle worked 13 years for contributing employers immediately prior to his application. He was damaged by the defendants' invocation of the 15-year requirement and their failure to inform him that he could solve the problem by working one day in each of the next two years, or that the remaining two years might be waived if, as the district court found, he was disabled. He was entitled to his pension and its denial was a breach of the trustees' fiduciary responsibilities.

Krupka's situation is similar. He had worked during a total of 18 years for contributing employers, 13 of which were immediately prior to his application for pension benefits. He too should have been informed that a solution to the 15-year problem would be to work one day in each of the next two years. The district court found that he too was suffering from a disability that could have resulted in a waiver by the trustees of the final two years and the granting of his pension. Krupka was also disadvantaged because the 1966 amendment was applied to his 1955–1960 break in service, thus retroactively stripping him of credit for some five years employment prior to the break.

Friedlander too suffered a retroactive stripping of his previously-earned service credits. He worked for contributing employers during a total of 16 years. His break in service began in 1965. At that time he met all of the eligibility requirements except age. The 1966 amendments were applied to wipe out 13 years of service and more than 1250 contributory days. Defendants' contention that Friedlander's break in service was voluntary is unavailing in light of the retroactivity of the amendments.

Accordingly we find that Valle, Friedlander and Krupka were all unreasonably denied pension benefits and we approve the conclusions of the district court that they are entitled to recover.

### III

With respect to the monetary awards made by the district court, defendants claim that the district court erred in three respects: (1) as to Valle, by computing his benefits on the basis of formulas in effect prior to 1971; (2) as to Friedlander, by awarding death benefits; and (3) as to all plaintiffs, by awarding interest from the dates of the respective pension applications. We deal with each contention in turn.

### A. Pension Benefits Awarded to Valle

The amount of the monthly pension to which a pensioner is entitled at any given time is determined by multiplying the set dollar figure established by the Fund's trustees, times the number of years with which the pensioner is credited. In 1952 the dollar figure was $1.00; the time period was measured by the number of years of Union membership, up to a maximum of 30. At that rate, a pensioner with 15 years' Union membership would have received $1 × 15, or $15 per month. Over the years, both of the components of the equation have been changed. The dollar component was increased several times; it was $6.67 in July 1969, $8.00 in 1971, and $10.00 in 1972. Until 1971, the time component for participants who took regular, as opposed to early,

retirement, remained the number of years of Union membership. On January 1, 1971, for those who retired thereafter, the time component was changed to number of years of "benefit service." [16] Thus, in 1972, a pensioner who had 15 years of benefit service would have received $10 × 15, or $150 per month—whether he had been a Union member for 30 years or not at all.[17]

The judgment entered in favor of Valle for past and future pension benefits used, as the time component of the equation, his 30 years of Union membership. Future benefits were set at the current dollar level ($10) times 30, or $300 per month. Past benefits appear to have been calculated by multiplying his 30 years of Union membership times the prevailing dollar component ($6.67, $8.00 or $10.00) for each month since the date of his pension application in June 1969. The total award for past benefits was $34,376.90. Defendants contend that the proper time component was that adopted in 1971, i. e., years of "benefit service." They credit Valle with a total of 11¾ "benefit service" years. This would reduce Valle's future benefits to $117.50 per month, and his past benefit award to approximately $13,000.

■ We find no error in the amount of the district court's award of benefits to Valle. Valle retired and applied for pension benefits in 1969. The time component of the pension calculation in 1969 was years

of Union membership. The change to years of "benefit service", effective in 1971, by its terms applied only to participants who retired on or after January 1, 1971.[18] We have held that the denial of benefits to Valle in 1969 was arbitrary and capricious. He was entitled to begin collecting pension benefits at that time, and he is entitled to the equivalent of those benefits now.

### B. Welfare Death Benefits Awarded to Mrs. Friedlander

Defendants' challenge to the award of $5,000 in welfare death benefits to Mrs. Friedlander may stand on firmer footing. They contend that there is no evidence in the record to show Mrs. Friedlander's entitlement to such an award. And indeed, our attention has not been called to any factual support, but only to a statement of her counsel at a hearing below. Accordingly, we remand Friedlander for a further hearing with respect to welfare death benefits.

### C. Prejudgment Interest Awarded to All Plaintiffs

■ On their respective awards of past pension benefits, the district court awarded each plaintiff interest from the date of application for benefits. The defendants argue that under applicable New York law [19] prejudgment interest, if awarded at

16. See note 4 supra.

17. Krupka, for example, who was credited with a total of 13¾ years of benefit service for contributing employers during his 18 full or partial years of work, was awarded a monthly pension of $137.50.

The formula for early retirees such as Friedlander used "benefit service" as the time component and required a reduction of the normal pension amount by .5% for each month between the date of early retirement and the month following the retiree's 62nd birthday. Friedlander had 14 years of "benefit service." He retired and applied for benefits 16 months early. His pension was thus calculated by reducing the normal amount ($140) by 8% (.5 × 16), and Mrs. Friedlander was awarded $128.80.

18. Defendants argue that Valle's action would have been time-barred if not for the letter of February 5, 1971, and that the 1971 method of computing benefits therefore must be applied. Even if the basic assumption of this contention—that absent the 1971 "lulling" letter, Valle still would not have sued until 1978—is correct, the argument appears to have no merit whatever.

19. The award of prejudgment interest is a substantive aspect of formulation of remedy, Lee v. Joseph E. Seagram & Sons, Inc., 592 F.2d 39, 41 n.2 (2d Cir. 1979), and thus must be decided here with reference to New York law. Cf. Flexitized, Inc. v. National Flexitized Corp., 335 F.2d 774, 781 (2d Cir. 1964); Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 540–41 at n.2 (2d Cir. 1956).

all, should be awarded only from the dates the complaints were filed.[20]

The New York provision governing the award of prejudgment interest is CPLR § 5001, which provides in pertinent part as follows:

(a) Actions in which recoverable. Interest shall be recovered upon a sum awarded because of a breach of performance of a contract, or because of an act or omission depriving or otherwise interfering with title to, or possession or enjoyment of, property, except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion.

(b) Date from which computed. Interest shall be computed from the earliest ascertainable date the cause of action existed, except that interest upon damages incurred thereafter shall be computed from the date incurred. Where such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date.

The defendants urge that these actions are equitable ones, and that the award of prejudgment interest is discretionary rather than mandatory under CPLR § 5001(a). While the question is perhaps a close one, we agree that these actions are equitable in nature. The New York Court of Appeals in *Mitzner v. Jarcho, supra,* pointed out as follows:

The law governing the administration of pensions is a hybrid born of a marriage of contract and trust principles. Over the years both fields of law have vied for the dominant role. At first, courts fastened on the contractual nature of pensions. Because pensions presumably represented nothing more than agreements,

between employees or their unions and employers, an overwhelming demonstration of an improper denial of benefits was required before trustees would be judicially compelled to provide pension benefits to rejected applicants. (*Menke v. Thompson,* 140 F.2d 786.) Later cases, however, have accorded increasing weight to the fiduciary obligations borne by the trustees for the benefit of the employees. (*Lee v. Nesbitt,* 453 F.2d 1309; *Norton v. I.A.M. Nat. Pension Fund,* 553 F.2d 1352.) Even where the trustees are vested, by the terms of the trust indenture, with sole authority on matters relating to employees' rights to receive pension benefits, a denial of benefits will be judicially set aside if the "board's ruling was motivated by bad faith, or arrived at by fraud or arbitrary action."

44 N.Y.2d at 44–45, 403 N.Y.S.2d at 492–493, 374 N.E.2d at 390 (citations omitted).

This is precisely the situation at bar. We have affirmed the awards of pension benefits on the ground that the actions of the defendants were arbitrary and capricious as applied to these particular beneficiaries. The defendants may well have complied with the letter of the Plan. But our conclusion rests on the fiduciary relationship between the defendants and the beneficiaries of the Fund rather than on the language of the Plan itself. Nowhere in the Plan, for example, is there a provision spelling out a requirement that defendants notify beneficiaries of changes in eligibility requirements. Yet we find for plaintiffs in part because the defendants failed to give plaintiffs adequate notice of the amendments to the Plan. Since the plaintiffs' entitlement to benefits is based not on "breach of performance of a contract" but on principles of equity, under CPLR § 5001 the plaintiffs were not entitled to interest from the date of the pension applications as a matter of

---

**20.** At oral argument defendants abandoned the contention argued in their brief that 28 U.S.C. § 1961 prevents the trial court, as a matter of law, from awarding any prejudgment interest. Such an argument has no merit. 28 U.S.C. § 1961 "relates only to interest recoverable on the judgment itself and says nothing whatever

about whether prejudgment interest is appropriate in a given case." *Lodges 743 and 1746 v. United Aircraft Corp.,* 534 F.2d 422, 446 n.42 (2d Cir. 1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). *See also, Louisiana & A. Ry. Co. v. Export Drum Co.,* 359 F.2d 311 (5th Cir. 1966).

right. Rather, the district court must decide, in its wisdom, whether, at what rate, and from what date to award prejudgment interest.

There is nothing in § 5001, of course, to prevent the court from determining, in its discretion in an equitable action, to award interest dating back to the earliest ascertainable date that a cause of action existed. Thus, the district judge here may have deemed it appropriate in all the circumstances to award the plaintiffs interest from the dates on which the respective pension applications were rejected. Had he done so, we would have found him to have acted well within the bounds of discretion. *See Agro v. Joint Plumbing Industry Board*, 623 F.2d 207, No. 79–7553, also decided today.

Our difficulty is that the record is clouded as to the actual basis on which the date from which interest should run was selected. At trial, the district judge stated that he believed he was *required* to award interest from the dates the applications were denied and that he did not have discretion in the matter; he stated that if he had discretion he would award interest only from the dates of the filing of the complaints. While defendants assured the district judge that he did have discretion, and the parties offered to brief the question, we are unable to determine on the record before us whether the court held fast to its belief that he had no power to award interest from any date other than the accrual of the cause of action, or whether he came to the view that he could exercise his discretion and that that discretion should lead him to award interest from the dates the pensions were denied. Since the question is one that the parties are entitled to have the district court decide in the first instance, we remand for clarification or for further consideration.

Judgment in accordance with opinion. Costs to appellees.