Joseph AGRO, Plaintiff-Appellee,

v.

JOINT PLUMBING INDUSTRY BOARD (Local 2, U.A.); Harvey B. Rehner, John J. Murray, Lawrence Felder, and Morris Olshina, Individually and in their Capacities as Chairman, Co-Chairman, Treasurer, and Executive Secretary, respectively; Louis Desiderio, Morris Olshina, William Greenblatt, Leonard X. Farbman, Lawrence Felder, and William Gross, Individually and in their Capacities as Trustees of the Joint Plumbing Industry Board Pension Fund; and Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, John J. Murray, Individually and in his Capacity as President, Defendants-Appellants.

No. 537, Docket 79–7553.

United States Court of Appeals, Second Circuit.

Argued Jan. 24, 1980.

Decided April 11, 1980.

Harold Skovronsky, Brooklyn, N. Y. (Schoffman & Skovronsky, Brooklyn, N. Y., on the brief), for plaintiff-appellee.

Stephen J. Smirti, Jr., Garden City, N. Y. (Robert A. Kennedy, Richard L. O'Hara, Colleran, O'Hara & Kennedy, P. C., Garden City, N. Y., on the brief), for defendants-appellants.

Before MULLIGAN, VAN GRAAFEILAND and KEARSE, Circuit Judges.

KEARSE, Circuit Judge:

The Joint Plumbing Industry Board (the "Board"), Local Union No. 2 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry (the "Union") and the individual defendants appeal from a final judgment of the United States District Court for the Southern District of New York, Robert W. Sweet, *Judge*, declaring that plaintiff Joseph Agro is enti-

tled to future pension benefits and awarding him past benefits plus interest. 471 F.Supp. 856 (S.D.N.Y.1979). For the reasons below, we affirm.

## I

This is one of several unconsolidated cases argued together on appeal.[1] All of the cases involved retired plumbers who were denied pension benefits from the Plumbing Industry Pension Fund (the "Fund"), established and administered by the defendants. The complaints challenged certain amendments to the rules of eligibility for benefits as applied to the plaintiffs.

The history of the various amendments to the Fund's rules for pension eligibility is set forth extensively in our opinion filed today in *Valle v. Joint Plumbing Industry Board*, No. 79–7616, 623 F.2d 196, and will only be summarized here. Under the rules as they existed in 1963, a participant in the plan could qualify for pension benefits if he was 65 years old, had worked at least 1250 days for contributing employers, and had worked for such employers during the 2 years preceding his application for benefits. The 1966 amendments introduced a requirement that the participant have worked for contributing employers in each of the 15 years immediately prior to application for pension benefits. Amendments in 1968 and 1969 lowered the minimum age for regular retirement to 64 and 62, respectively.

Under the rules prevailing through 1970, the level of monthly benefits payable upon regular retirement was determined by multiplying a fixed dollar amount times the number of years of Union membership.[2] In 1971, the plan was amended to, *inter alia*, change the basis for computing benefits from years of Union membership to years of contributory service.

Joseph Agro was born in 1906. He began working in the plumbing trade in the early 1920's and joined the Union in 1939. Although Agro apparently worked in the trade continuously from 1950–1971, there were several periods in which he did not work for contributing employers. These occurred in 1956–1958 and 1966–1969, when he worked abroad, and in 1952 and 1954. Thus in the period 1950–1971 Agro worked for contributing employers for a total of 13 years, accumulating 1466 days of contributory service.

In 1971 Agro retired. He sought to apply for a pension in August of that year, but defendants discouraged him from applying formally at that time. Agro testified that he was not informed of the amendments to the eligibility requirements adopted in 1966 and 1971 until long after he retired. In May 1978 Agro brought suit alleging that the defendants had failed adequately to inform employees of the changes in eligibility requirements, and had denied him pension benefits arbitrarily and capriciously in violation of federal and state law.[3]

*The District Court's Decision*

The district court held that the defendants had no duty to inform Agro of changes in the eligibility requirements for pension benefits, and, emphasizing that Agro's breaks in service for contributory employers were voluntary, ruled that the 15 consecutive years service provision imposed by the 1966 amendments was not arbitrary or capricious as applied to Agro.

Nevertheless, the district court ruled that Agro was entitled to a pension on the ground that the eligibility requirements under the 1963 amendments had been "grandfathered" into the 1966 and 1971 amendments: that any employee who prior to

1. Also argued were *Valle v. Joint Plumbing Industry Board*, No. 79–7616, *Friedlander v. Joint Plumbing Industry Board*, No. 79–7612, *Krupka v. Joint Plumbing Industry Board*, No. 79–7614, 623 F.2d 196; *Indursky v. Joint Plumbing Industry Board*, No. 79–7398, and *Denmark v. Jarcho*, No. 79–7620, all decided today in other opinions or orders.

2. Provision for early retirement was introduced in 1966. The amount payable on early retirement depended on number of years employment with a contributing employer rather than on years of Union membership.

3. Diversity and federal question jurisdiction were asserted under 28 U.S.C. §§ 1331(a), 1332, 1337 (1976) and 29 U.S.C. §§ 185, 186, 1132 (1976).

1966 met at least all of the non-age requirements for a pension under the 1963 amendments, continued to be eligible for pension benefits under the 1966 amendments. Since Agro had satisfied, prior to 1966, all of the requirements of the 1963 amendments except age, the court concluded that he was entitled to benefits, and awarded him $27,900 in past benefits, plus interest accruing from the due date of each monthly payment. The past benefits were computed on the basis of years of Union membership rather than on years of contributory service.

On appeal, the defendants argue chiefly that the district court's finding of a grandfathering provision was clearly erroneous[4] and challenge the calculation of benefits awarded. Agro, in addition to arguing in support of the opinion below, contends that the judgment may be sustained on the ground that the 1966 and 1971 amendments are arbitrary and capricious as applied to him.

## II

Our decision to affirm the judgment of the district court does not turn on the possibility that there may have been a grandfathering of the 1963 eligibility rules,[5] but rather on fundamental equitable aspects of the relationship between a pension fund trustee and the participants for whose benefit the pension fund is administered. As we have noted in *Valle v. Joint Plumbing Industry Board, supra,* pension fund trustees normally have wide latitude to amend rules regarding eligibility for benefits in order to safeguard the fund's assets and fulfill the purposes of the pension plan; but the amendments cannot be applied arbitrarily and capriciously. In determining whether amendments are arbitrary and capricious when applied to a particular participant, we consider such questions as the extent to which the participant was an intended beneficiary of the plan, the extent to which the amendment is applied retroactively to strip the participant of previously earned credits, the extent to which he was notified of the amendment, and the extent to which it is shown that actuarial concerns require denial of benefits to him. *Mitzner v. Jarcho,* 44 N.Y.2d 39, 403 N.Y.S.2d 490, 374 N.E.2d 388 (1978). We find that all of these factors work in Agro's favor.

4. Defendants claim also that Agro did not qualify under the 1963 rules because those rules too required 15 years, albeit not necessarily consecutive years, of service. This contention, which had no basis in the language of the amendments themselves, has finally, we hope, been put to rest by the New York Court of Appeals' decision in *Huffe v. Jarcho,* 49 N.Y.2d 726, 426 N.Y.S.2d 262, 402 N.E.2d 1163 (1980), *rev'g* 64 A.D.2d 960, 408 N.Y.S.2d 490 (1st Dep't 1978).

5. The district court's decision that eligibility under the 1963 amendments was carried over into the 1966 and 1971 amendments was based on the trial testimony of defendant Morris Olshina, executive secretary of the Board. His testimony with respect to the 1971 amendments adverted to the concept of grandfathering, which he described and illustrated, on questioning by defendants' counsel, as follows:

A Grandfathering is the method of protecting anyone who was at that time eligible under any other rules in order not to take away rights from a member who would be eligible under another rule but not eligible under the new rule, we said henceforth these rules will be in effect. However, anyone who was eligible under any previous rules, when he comes up for pension would be judged by the previous rules, so that he would not be

discriminated against and suddenly find himself without a pension, whereas before the '71 amendment he was eligible for a pension.

Q So that would mean if some people had become eligible under for instance the '66 amendment or the '63 amendment, whatever it was, they would become eligible for a pension even though the 1971 application—the 1971 amendment to the plan changed those eligibility rules; is that correct?

A That's correct.

Q And this was instituted in 1971?

A Yes, it was.

This is the only suggestion in the record that eligibility under the 1963 amendment may have been grandfathered into the 1966 amendment. We note that the language of the 1966 amendment contains no such suggestion, and may be contrasted with the language of the 1971 amendment which expressly preserved the set of conditions established in 1966 as a means of qualifying for a pension. Since we find, however, that the 1966 and 1971 amendments were arbitrary and capricious as applied to Agro, we need not decide whether the district court's finding of grandfathering was clearly erroneous.

Agro appears to have been an intended beneficiary of the Fund. A member of the Union since shortly after its inception, he has worked in the trade for his entire career. He worked for contributing employers for 13 years relatively late in his career, accumulating well in excess of the minimum number of contributory days. He worked 11 of those years, including more than the required 1250 days, prior to 1966. The 1966 amendments stripped him of these credits and left him, then 60 years old, to start anew on the newly required 15 consecutive year period prior to retirement. The impact of the requirement could at least have been ameliorated if defendants had simply notified Agro of the 1966 amendments: [6] he could then have elected to forgo his 1966–69 employment abroad in favor of continuing to work for contributing employers here until age 67, and met the 15-year requirement. The fact that Agro's break in service for contributing employers was voluntary makes the failure of defendants to give notice all the more prejudicial. We conclude that the 15-year requirement of the 1966 amendment was arbitrary and capricious as applied to Agro, and that he is entitled to a pension.

### III

Defendants also challenged the district court's calculation of benefits to be awarded to Agro.[7] For reasons which differ somewhat from those of the district court, we believe the calculation was correct.

As set forth in greater detail in *Valle v. Joint Plumbing Industry Board, supra,* the amount of the monthly benefits to which a pensioner is entitled at any given time is determined by multiplying the set dollar figure established by the trustees, by the number of years with which the pensioner is credited. From the beginning of the Fund until 1971, the time component of the equation for those who took regular retirement was the number of years of Union membership. As of January 1, 1971 that component was changed, for those who took regular retirement on or after that date, to the number of years of "benefit service," a term designating certain periods of service for employers who contributed to the Fund.[8]

The district court found that Agro was improperly discouraged from applying for pension benefits in August 1971, and was entitled to monthly payments from that date. The level of monthly payments was determined by using years of Union membership as the time component of the equation. The district court so ruled because the booklet distributed to participants in the plan, purporting to reflect the 1971 amendments, used that measure. The court concluded that Agro was entitled to rely on the booklet. Defendants argued that the booklet is not the operative document, and that in any event since the booklet itself

---

**6.** The 1966 amendment was actually adopted on April 27, 1966. Defendants did not mail notice of any amendments to the participants until 1972. While the district court found that the 1966 amendments had been discussed at Union meetings, it stopped short of finding that Agro himself had notice of the amendments. Agro testified that he had attended some, but not all, Union meetings, and indeed he was out of the country in 1966–1969. He testified that he heard no discussion of the amendments at the meetings he attended. The record thus does not support an inference that Agro had timely notice of the amendments.

**7.** The judgment awards interest to Agro on the past benefits to which he is entitled, dating back to the due date of each monthly payment. The award from such dates was within the bounds of the district court's discretion. *See*

*Valle v. Joint Plumbing Industry Board,* No. 79–7616, 623 F.2d 196.

In their brief on appeal, defendants argued that the award of any prejudgment interest to Valle was precluded by 28 U.S.C. § 1961 (1976). They conceded at oral argument, however, that this contention has no merit. 28 U.S.C. § 1961 "relates only to interest recoverable on the judgment itself and says nothing whatever about whether prejudgment interest is appropriate in a given case." *Lodges 743 and 1746 v. United Aircraft Corp.,* 534 F.2d 422, 446 n. 42 (2d Cir. 1975), *cert. denied,* 429 U.S. 825, 97 S.Ct. 79, 50 L.Ed.2d 87 (1976). *See also, Louisiana & A. Ry. Co. v. Export Drum Co.,* 359 F.2d 311 (5th Cir. 1966).

**8.** *See Valle v. Joint Plumbing Industry Board,* 623 F.2d 196 at note 4.

was not distributed until 1972, some months after Agro had applied for benefits, he could not have relied on the accuracy of its summary.

Our rejection of defendants' attempt to calculate Agro's benefits by reference to the formula adopted in 1971 rests on more fundamental notions of fairness. In 1969, the age for regular retirement was reduced from 64 to 62. In 1969 Agro was 63 and had been a Union member for 30 years. Prior to 1966 he had accumulated more than the minimum number of days needed to qualify him for a pension and, as discussed above, the 1966 amendments were arbitrary and capricious as applied to him. Thus, when the normal retirement age was lowered to 62 in 1969, Agro became fully entitled to a pension: he had only to retire and claim it. Had he done so in 1969 or 1970, his monthly benefits would have been calculated with reference to his years of Union membership—*i. e.*, 30 times the prevailing dollar amount. If Agro had had advance notice that as of January 1, 1971 the method of computing monthly benefits would be changed, reducing his entitlement to monthly benefits from 30 times the dollar figure to only 13 times that figure, he might well have elected to retire at the end of 1970 and to take his pension as it was available immediately prior to the change. Because the defendants gave no notice that this change would be made, Agro was denied this opportunity. Hence we are of the view that the 1971 amendment, insofar as it changed the time component of the monthly benefit equation, was arbitrary and capricious as applied to Agro. We do not deny that trustees have the power to revise payment formulas in light of their judgment as to the best interests of the Fund. Flexibility of this sort is obviously necessary. But when changes are made that will significantly alter the rights of participants whose eligibility for pensions, including age, is already established, the trustees have a duty to notify those beneficiaries, giving them either advance notice or a grace period within which they may elect to retire and protect their fully earned rights. *See Kosty v. Lewis,* 319 F.2d 744, 748–49 (D.C.

Cir. 1963), *cert. denied,* 375 U.S. 964, 84 S.Ct. 482, 11 L.Ed.2d 414 (1964). We thus are in accord with the district court's calculation of benefits.

The judgment is affirmed.

