**C. William NASS, Plaintiff,**

**v.**

**STAFF RETIREMENT PLAN OF LOCAL 810, I.B.T., Defendant.**

**No. 79 Civ. 3884 (JMC).**

United States District Court,
S. D. New York.

May 4, 1981.

John B. Ball, Syosset, N. Y., for plaintiff.

Robert M. Ziskin, New York City, for defendant.

## OPINION

CANNELLA, District Judge:

After a trial on the merits of plaintiff's complaint, the Court finds for the defendant and the complaint is dismissed. Plaintiff is entitled to monthly pension benefits in the amount of $111.61 commencing September 1, 1981 or an actuarial equivalent of that figure to commence at an earlier date selected by plaintiff.

## FACTS

Plaintiff C. William Nass brings this action pursuant to section 502 of the Employee Retirement Income Security Act of 1974 ["ERISA"], 29 U.S.C. § 1132, seeking monthly pension benefits in the amount of $408.21 retroactively to January 1977. Complaint ¶¶ 8–9 (filed July 26, 1979).[1] Defendant Staff Retirement Plan of Local 810, International Brotherhood of Teamsters [the "Plan"], does not dispute plain-

---

1. Plaintiff served a copy of his complaint upon the Secretary of Labor pursuant to 29 U.S.C. § 1132(h). The Secretary has taken no action in this litigation.

tiff's eligibility for benefits under the Plan, but calculates that instead of $408.21, plaintiff is entitled to a monthly pension of $111.61 commencing September 1, 1981, or a reduced actuarial equivalent commencing prior to that date. Plaintiff demands the award of past due pension benefits, plus interest and attorney's fees, as well as injunctive relief requiring the Plan to pay benefits in the higher amount in the future.

On January 1, 1961, Local 810, International Brotherhood of Teamsters ["Local 810"], adopted the Plan and executed a trust agreement to provide retirement benefits for its employees. See Plaintiff's Exhibit 1, Exhibits B and C [hereinafter Plaintiff's Exhibits will be referred to as "PX" and Defendant's Exhibits will be referred to as "DX"]. Local 810 adopted an amended and restated Plan effective January 1, 1976 [the "Restated Plan"] which was intended to meet the requirements of ERISA. See id., Exhibit A. The provisions of the Restated Plan apply only to an employee who terminates employment on or after January 1, 1976 and since plaintiff terminated his employment with Local 810 on December 8, 1976, the Restated Plan applies to his claim. Id., Exhibit A, Art. I.

The Restated Plan provides that a participating employee [2] of Local 810, retiring at age 65 or after ten years service, whichever is later, see id., Exhibit A, Art. II, § 1(w), shall receive pension benefits payable monthly for the remainder of the pensioner's life in an amount equal to $\frac{1}{12}$th of 3% of his Average Annual Compensation or $5, whichever is greater, for each year of credited service [3] up to a maximum of 25 years. See id., Exhibit A, Art. IV, § 2.[4] Average Annual Compensation for an employee who became a participant of the Plan prior to January 1, 1970, like plaintiff, is his annual rate of compensation on December 31, 1969.[5] See id., Exhibit A, Art. II, § 1(q). A participant with at least ten years of service who has not yet reached normal retirement age under the Plan is eligible to receive a vested retirement benefit commencing on his normal retirement date or within the ten years preceding that date in an adjusted amount. See id., Exhibit A, Art. II, § 1(z); Art. IV, §§ 5, 6.

The Restated Plan further provides that the Plan shall be administered by an Administrative Committee [the "Committee"] appointed by Local 810 which is and was headed at all pertinent times by Dennis Silverman. The Committee is authorized to make all determinations regarding the right of any person to a benefit, id., Exhibit A,

---

2. The Restated Plan defines the employer as Local 810 and an employee as any person who receives remuneration for personal services rendered to the employer. Id., Exhibit A, Art. II, § 1(c), (i).

3. Under the Restated Plan, a participant's eligibility for benefits is determined on the basis of years of service. One year of service accrues each year in which the participant has worked 1,000 hours or more. See id., Exhibit A, Art. III, § 2. The amount of benefits payable under the Restated Plan, however, is determined on the basis of years of credited service. One year of credited service accrues for each year the participant has worked 2,000 hours or more. See id., Exhibit A, Art. III, § 3. In the present action, the parties both calculate plaintiff's benefits on the basis of 12.333 years or 12.417 years of credited service. It would appear that both amounts of plaintiff's credited service include hours of service performed for entities other than Local 810. The parties did not address this issue during the trial or in their post-trial memorandums and did not present any evidence as to the number of hours of service attributable to Local 810 only. Therefore, the Court does not know if the Committee normally includes services performed for related organizations in the amount of credited service while excluding the salary attributable thereto from the benefits calculation. Since this issue was not raised, the Court will accept the defendant's computation of plaintiff's credited service in reviewing defendant's calculation of plaintiff's benefits.

4. The Restated Plan also provides for the payment of benefits at an earlier retirement age after completion of fifteen or twenty years of service. See id., Exhibit A, Art. II, § 1(x), (y). In addition, a Plan participant may elect survivor benefits or joint and survivor benefits pursuant to the provisions of Art. IV, §§ 8, 9. Plaintiff has not elected either option as of this time. Tr. at 47.

5. Compensation is defined as salary and wages paid to the Participant by the Employer for personal services rendered during the period of service. Id., Exhibit A, Art. II, § 1(p).

Art. VI, §§ 1, 2, 3, and has "such duties and powers as may be necessary to discharge their duties hereunder," including the power "to construe and interpret the Plan, decide all questions of eligibility and determine the amount, manner and time of payment of any benefits hereunder." *Id.*, Exhibit A, Art. VI, § 5(a). To aid in the performance of its duties, the Committee may adopt such rules and actuarial tables as it deems necessary or appropriate and "[a]ll rules and decisions of the Committee shall be uniformly and consistently applied to all Participants in similar circumstances. When making a determination or calculation, the Committee shall be entitled to rely upon information furnished by a Participant or beneficiary, the Employer, the legal counsel of the Employer, or the Actuary." *Id.*, Exhibit A, Art. VI, § 6. Moreover, the Committee may deny all benefits to a participant who makes any misrepresentation upon which the Committee relies in his application for benefits. *Id.*, Exhibit A, Art. IV, § 12. The Committee, however, does not have the power "to add to, subtract from or modify any of the terms of the Plan, or to change or add to any benefits provided by the Plan, or to waive or fail to apply any requirements of eligibility for a Pension under the Plan." *Id.*, Exhibit A, Art. VI, § 5.

With this brief summary of the Plan in mind, a review of the parties' contentions is appropriate before discussing the facts of this case. Plaintiff has two objections to defendant's calculation of his pension benefits. *First,* plaintiff contends that the Plan lacks the power to delay the starting date of his entitlement to benefits based on an alleged misrepresentation of his age at the time he became employed by Local 810. Alternatively, plaintiff contends that defendant's decision to delay his retirement date for that reason is arbitrary and capricious. *Second,* plaintiff challenges the validity of the 1969 salary figure used by defendant to compute his benefits. De-

fendant contends that during the period plaintiff was employed by Local 810, he was also employed by and performed services for other related organizations. These organizations and Local 810 allocated among themselves that portion of plaintiff's salary attributable to work performed for each organization. Defendant computed plaintiff's pension benefits based on the portion of his 1969 salary attributable to work he performed for Local 810, rather than basing this computation on his gross 1969 salary from all of these organizations. Plaintiff, on the other hand, contends that he was solely an employee of Local 810 and that his pension should be computed on the basis of his gross 1969 salary regardless of how the various organizations for which he performed services chose to allocate his salary expense among themselves. In addition, plaintiff contends that defendant calculated his benefits differently from two former employees of Local 810, who retired before plaintiff. These individuals, like plaintiff, performed services for the related organizations and their salaries were also allocated among them. Defendant nonetheless calculated their benefits on the basis of their gross 1969 salary rather than the portion of it attributable to work performed for Local 810.

The Court now turns to the facts of this case. In July 1964, Milton Silverman, the President of Local 810, hired plaintiff as an accountant. During an interview, plaintiff, who was born August 12, 1906, *see* PX 3, represented to Silverman that he was forty-seven years old, although he was actually fifty-seven years old, because he feared he would not be hired if he told Silverman his true age.[6] Local 810 employed plaintiff from July 20, 1964 until he was discharged on December 8, 1976. At that time, plaintiff retired at seventy years of age following twelve years, four months and twenty days of employment with Local 810.

---

**6.** Plaintiff repeated this misrepresentation once more when he filled out an enrollment card for the United Metal, Wire and Machine Pension and Welfare Funds. *See* PX 1, Exhibit F. De-

fendant does not contend that plaintiff misrepresented his age at the time he applied for benefits under the Plan.

During the course of his employment, plaintiff performed various bookkeeping responsibilities for Local 810, including maintenance of its bank accounts, drawing checks that were signed by its officers, preparing reports to various governmental agencies, preparing Social Security and Unemployment Insurance tax payments, and monitoring Local 810's investments. *See* Transcript of Proceedings at 27, 40, 65, 73, *Nass v. Staff Retirement Plan of Local 810, IBT,* 79 Civ. 3884 (filed Jan. 16, 1981) [hereinafter "Tr."]. During this period, plaintiff supervised an office staff of approximately eighteen to twenty people,[7] and his immediate superior was first Milton Silverman and later Milton's son, Dennis Silverman.[8]

Plaintiff, as well as several other Local 810 employees, also performed services for a number of organizations related to Local 810. These organizations, located in the same offices as Local 810, include the United Wire, Metal and Machine Pension Fund [the "Pension Fund"], the United Wire, Metal and Machine Health and Welfare Fund [the "Welfare Fund"], Local 810's Dental Plan and Medical Fund and an independent union, Local 1614, International Brotherhood of Electrical Workers ["Local 1614"].[9] With the exception of Local 1614, these organizations provide benefits to the members of Local 810 and are funded by employer contributions pursuant to the terms of collective bargaining agreements. The defendant Plan, on the other hand, was created to provide pension benefits for approximately nineteen to twenty-five individuals employed by Local 810.[10] Employees of the other organizations are not eligible for benefits under the Plan, although these individuals, as well as employees of Local 810, are also eligible for benefits from the Pension and Welfare Funds as well as other pension funds to which Local 810 made contributions on their behalf.[11] Tr. at 148–49.

Plaintiff was paid for his services from 1964 to 1969 by checks with the account title "Local 810 Administrative Fund" [the "Administrative Fund"]. Tr. at 32. During this period, employees of the Pension and Welfare Funds were also paid from this account. Thereafter, the New York State Department of Labor required Local 810 to maintain a payroll separate from the Pension and Welfare Funds. Accordingly, in 1969 plaintiff's paychecks were drawn on an account entitled "Local 810, IBT Payroll Account" [the "Payroll Account"] [12] while the Pension and Welfare Funds had sepa-

---

**7.** Besides his duties as an accountant, plaintiff also functioned as the office manager since he was responsible for the time records of the office personnel of Local 810 as well as employees of related organizations that shared its offices. Tr. at 68–69.

**8.** When plaintiff first became employed, Milton Silverman was President of Local 810 as well as the administrator and trustee of the United Wire, Metal and Machine Pension Fund and Health and Welfare Fund. Tr. at 51. In 1971, and continuing to date, Milton's son, Dennis Silverman, became the President of Local 810, *see* Tr. at 96, and the administrator and trustee of the United Wire, Metal and Machine Pension Fund and Health and Welfare Fund, *see* Tr. at 79. He is also chairman of the Administrative Committee of the Plan. Tr. at 96–97.

**9.** Local 1614 later merged with Local 810. Tr. at 41.

**10.** To fund the Plan, Local 810 contributes one dollar per month per union member to the Corporate Trustee of the Plan. Tr. at 50. The original trust agreement provided for a contribution of thirty-five cents per member per month. *See* PX 1, Exhibit C at 1. Defendant contends that the amount contributed to the Plan is based upon statistical information such as the age of the Plan participants, although Dennis Silverman testified that the Plan's funding has nothing to do with the age of the participants, Tr. at 137, and there was no evidence presented that the misrepresentation of plaintiff's age would have caused changes in the contribution formula. *See* PX 1, Interrogatory X(c) at 13.

**11.** For example, plaintiff is currently receiving benefits from the Pension Fund, the Central States Pension Fund, the Teamster Affiliates Pension Fund and a Joint Council Pension Fund. Tr. at 15.

**12.** In addition to the Payroll Account, Local 810 maintained other checking accounts, including its operating account which it used to pay its operating expenses such as contributions to the Plan, contributions to the Payroll Account and other expenses listed in DX A. Tr. at 54–56, 65.

rate payroll accounts for employees that worked only for those entities. *Id.* Plaintiff testified that virtually all of the employees who were paid by the Payroll Account, like plaintiff, performed some services for the other organizations. Tr. at 33. It is undisputed that the organizations that received the services of these employees paid an allocated portion of their salary and the taxes attributable thereto, in accordance with ratios determined by Milton Silverman and approved by the New York State Department of Labor, by making payments to the Payroll Account. Tr. at 62–63, 103–04.[13] Moreover, as bookkeeper, plaintiff kept records entitled "Allocation of Payroll" which recorded the contributions of the various organizations to the Payroll Account. *See* PX 4, DX A.[14] Plaintiff's 1969 salary from the Payroll Account was $13,150, of which $3,620 was allocated to Local 810. The current President of Local 810, Dennis Silverman, testified at trial that the Payroll Account was not the exclusive property of Local 810, but rather belonged to all the organizations contributing to it. Tr. at 115. He further testified that the Administrative Fund and later the Payroll Account were established to obviate the inconvenience of paying these individuals with separate checks from the individual entities and to avoid the payment of addi-

tional social security contributions and withholding taxes that would thereby be necessitated.[15] Tr. at 118–19. Nonetheless, Local 810's officers opened the Payroll Account and were authorized to sign its checks. Tr. at 112; PX 9.[16]

Following his discharge, plaintiff applied for benefits under the Plan by letter dated February 28, 1977 to Henry Brickman, counsel for the Plan. *See* DX B. By letter dated August 4, 1977, Dennis Silverman responded that plaintiff's application was under consideration. PX 1, Exhibit G. On April 13, 1978, the Plan forwarded a letter from the Plan's actuary to plaintiff's attorney. In that letter, the actuary, Ira F. Fishman, who did not testify at trial, found that plaintiff's misstatement of age at the time he commenced employment was "significant actuarially," and he recommended that "[w]hen such a correction first becomes known at point of retirement in a plan of this size [19 active participants], a common treatment is to hold the participant to his original data. Applied to Mr. Nass, and it seems appropriate to do so, his normal retirement date for plan purposes would remain at September 1, 1981 [the beginning of the month following his 65th birthday if his misstatement of age is accepted]." PX 1, Exhibit H; *see* Tr. at 160. Fishman also

---

13. Dennis Silverman testified that most of the individuals paid by the Payroll Account were business agents and organizers of Local 810 who would devote a portion of their services to matters concerning the related organizations. Tr. at 101–02. Regarding the three office personnel of Local 810, including plaintiff, *see* Tr. at 104, Silverman testified that he and his father based the percentages allocating the salaries among the organizations upon estimates of the amount of time they devoted to matters of the particular organization. Tr. at 104. Dennis Silverman further testified that in 1976 he and approximately four other individuals were paid from the Payroll Account but their salaries were paid by Local 810 alone and not allocated to the other entities. Tr. at 105, 107–10. Silverman testified that prior to the enactment of ERISA a portion of his own salary had been paid by the Pension and Welfare Funds, but thereafter such compensation was prohibited by ERISA. Tr. at 105.

14. These organizations also contributed to the Payroll Account on a monthly basis to allocate

expenses such as rent and electricity. *See* DX A; Tr. at 65.

15. Plaintiff contends that under the then existing federal tax laws, each employer was obligated to pay social security tax and unemployment insurance tax as well as to withhold social security on salary paid to the employee up to a specified limit. *See* Tr. at 9–10. He contends that since none of the related organizations paid such taxes, they cannot be considered plaintiff's employers. These organizations did, however, pay their allocated share of taxes through contributions to the Payroll Account which was plaintiff's nominal employer on all tax forms. The Court takes no position on whether such allocation of taxes was proper under federal or local tax laws.

16. The authorization for the Payroll Account, *see* PX 9, is signed by the President and Secretary of Local 810. The Payroll Account itself had no officers. Tr. at 118.

found that plaintiff could elect to receive an actuarial equivalent amount of benefits prior to his normal retirement date pursuant to Article IV, § 6(b) of the Restated Plan. *Id.*

On July 6, 1978, the Plan informed plaintiff that it had adopted the actuary's computation of his monthly benefits amounting to $111.61 commencing September 1, 1981. *Id.*, Exhibit I. The Plan's notification to plaintiff enclosed the following calculation made by the Plan's actuary:

1. Final average plan earnings— Local 810 only (no increases after 1969 recognized for plan purposes) . . . . . . . . . . . . . . . . . .$   3,620.00

2. Unit plan benefit (minimum = $5): ½₂ × item 1 × 3% . . . . . . . . . . . . . .$       9.05

3. Credited plan service: 7/20/64 – 12/8/76 . . . . . . . . . . . . . .   12.333 yrs.*

4. Accrued vested monthly pension benefit payable at normal retirement date: Item 2 × item 3 . . . . . . . . . . . . . . . .$     111.61

* assuming no service credit for incomplete months.

*Id.* [17] In his July 17, 1978 letter responding to plaintiff's inquiries concerning the 1969 earnings figure used to compute his benefits, Dennis Silverman explained:

As you were responsible for the day to day keeping of books of Local 810 IBT and its related funds you should recall that during the year 1969 you were employed respectively by Local 810 IBT, The United Wire, Metal & Machine Pension Fund, The United Wire, Metal & Machine Health & Welfare Fund and by Local 1614 IBEW. You should further recall that during the year 1969 you received payroll checks drawn against the Local 810 IBT Payroll Account, which Account was nothing more than a bookkeeping conduit which apportioned salaries of those various entities mentioned above.

Payroll records for the year 1969 reveal that you earned a total of $13,150, of which $3,620 was earned from Local 810 IBT; $1,395 was earned from 1614 EBEW [*sic*]; $4,815 was earned from the United Wire, Metal & Machine Health & Welfare Fund and $3,320 was earned from the United Wire, Metal and Machine Pension Fund.

*Id.*, Exhibit J.

At trial, plaintiff testified that he was solely an employee of Local 810 from July 20, 1964 to December 8, 1976, and that he was not employed by any other organizations during that period. Tr. at 25–27. Therefore, plaintiff contends that his 1969 gross salary of $13,150 should be used to compute his benefits following the same formula used by the Plan's actuary: ½₂ × .03 × $13,150 × 12.417 (years of credited service) [18] = $408.21. *See* Complaint, ¶ 8 (filed July 26, 1979); Plaintiff's Post-Trial Memorandum at 4 (dated Jan. 7, 1981).

In arguing that he was employed solely by Local 810, plaintiff points out that he was hired by and under the direction and control of the President of Local 810, first Milton Silverman and later Dennis Silverman. Plaintiff also relies on various reports and forms filed with governmental agencies which list his employer as "Local 810 IBT Payroll Account" which he argues was an account maintained by Local 810. *See* PX 2, 6, 7.[19] Plaintiff similarly con-

---

17. The actuary also informed plaintiff that he was entitled to elect a reduced actuarial equivalent monthly benefit in accordance with Article IV, § 6(b) of the Restated Plan to commence prior to September 1, 1981, adjusted by multiplying $111.61 by a factor computed from the following table:

| Years early | 0 | 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|---|---|
| Factor | 1.000 | .912 | .834 | .765 | .703 | .647 |

*Id.* Therefore, if plaintiff chose a starting date of July 1, 1978, the adjustment factor for 3 years and 2 months early retirement would be .755 resulting in a monthly benefit of $84.27.

18. Plaintiff contends that for the purpose of computing his benefits, he is entitled to 12 years and five months of credited service since he worked twelve years, four months and twenty days. *See* Plaintiff's Post-Trial Memorandum of Law at 4 (dated Jan. 7, 1981). The Plan's actuary, however, gave plaintiff credit for only 12 years and four months of credited service. The difference in benefits amounts to $2.76 per month. Tr. at 49.

19. In addition, plaintiff's verification of employment submitted to the Teamster Affiliates Pension Fund, *see* PX 8, states that plaintiff was a

tends that since his name does not appear in tax forms relating to the payroll accounts of the Pension or Welfare Funds, he cannot be considered their employee. *See, e. g.,* PX 5.[20]

As further support for this position, plaintiff argues that at least two Plan participants who retired before him received benefits computed on the basis of their gross 1969 salaries even though they too performed services for the same related organizations. Defendant admits that the two participants, Milton Leonard and David Hoffman, are receiving benefits based on their gross 1969 salaries from the Payroll Account, but contends that these benefits were awarded in the mistaken belief that the salary figures forwarded to the Committee by the Bookkeeping Department of Local 810 referred to their salaries from only Local 810 rather than all of the entities

combined. Tr. at 124–25. Moreover, defendant blames these mistakes on plaintiff, who forwarded the erroneous salary information to the Committee. *See* DX C, D.[21] Dennis Silverman testified that the Plan discovered its error regarding these two participants shortly before plaintiff retired and that it is currently engaged in proceedings before the Department of Labor to correct these discrepancies. Tr. at 124, 126.[22] He testified further that, at present, pension benefits are being computed on the basis of salary attributed to Local 810 alone.

## DISCUSSION

■ The administrators of pension trust funds have the responsibility, as fiduciaries, to administer the plan and its trust fund in the interest of present as well as

full-time employee of Local 810 and that his compensation for 1969 was $13,150. Dennis Silverman explained that at the time plaintiff's application was submitted, the Teamster Affiliates Pension Fund computed benefits on total salary from entities related to the local union. In the last two to three years, however, the Teamster Affiliates' plan has been amended so that benefits are computed on the basis of salary received from Local 810 alone. Tr. at 149–53.

**20.** The parties stipulated that the Pension Fund and the Welfare Fund have Internal Revenue Service taxpayer identification numbers different from the Payroll Account from which plaintiff was paid. Tr. at 121.

**21.** Plaintiff contends that the Committee knew that it was awarding benefits based on gross 1969 salary from the Payroll Account in these two instances, pointing to a report from plaintiff to the Committee concerning Leonard's application for benefits wherein Leonard's "gross" earnings from Local 810 are listed. *See* PX 10. Dennis Silverman at first testified that he interpreted the word "gross" contained in the report as referring to the total amount Leonard was paid by Local 810 and not the Payroll Account, *see* Tr. at 131, but later he stated that in the context of that document, "gross" referred to Leonard's total pay from the Payroll Account. Tr. at 132.

**22.** At trial the parties also compared plaintiff's treatment under the Plan to three other participants who retired after plaintiff—Edward Robinson, John Michalinas and Sophie Oschak. Robinson's pension dispute arose from the

Plan's refusal to credit his prior service for Local 1614. The dispute was settled and Robinson now receives a pension although not computed on the basis of his gross 1969 salary from the Payroll Account. Tr. at 134.

John Michalinas was an organizer and business agent employed by Local 810 who also performed services for the Pension and Welfare Funds. When he retired, his pension benefits were calculated on the basis of his Local 810 salary only and not on the portion of his salary attributable to the Pension and Welfare Funds. Tr. at 139, 164.

Finally, Sophie Oschak, the secretary-treasurer of Local 810, who performed services for Local 810, Local 1614 and the Pension and Welfare Funds, was paid by the Payroll Account. Tr. at 140. Both Sophie Oschak and her sister Celia, who worked in the dues department of Local 810 and received compensation from only Local 810 through payments from the Payroll Account, allegedly misstated their ages at the time they commenced employment and falsified certain documents in their pension file. Tr. at 165–66, 169. Like plaintiff, the Oschak sisters also disclosed their true age at the time they applied for benefits. The Plan settled its disputes with both sisters. With regard to Sophie, the Plan agreed to pay pension benefits based on the portion of her salary attributable to Local 810 with the understanding that she could claim benefits based on her gross 1969 salary if a court of competent jurisdiction later determined that participants of the Plan are entitled to pensions based on their overall compensation from all the entities. Tr. at 171.

future beneficiaries of the plan. The Court recognizes that this is no simple task. *See Valle v. Joint Plumbing Industry Board* (Local 2, U.A.), 623 F.2d 196, 202 (2d Cir. 1980). Normally, a plan accords its administrators flexibility to accommodate the interests of its various beneficiaries as well as to meet fluctuating economic conditions. The defendant Plan is no exception. The Executive Committee of Local 810 has the power to amend the terms of the Plan and the trust agreement and is responsible for the management of the trust assets. PX 1, Exhibit A, Art. VI, § 1. The Committee, on the other hand, has the sole responsibility for the administration of the Plan, and the Plan specifically empowers it to "construe and interpret" the Plan when determining the eligibility of a participant or the amount of his entitlement. *Id.*, Exhibit A, Art. VI, § 5(a). Furthermore, the Plan affords the Committee the discretion to adopt such rules and actuarial tables as it deems necessary or appropriate to aid in the performance of its duties. *Id.*, Exhibit A, Art. VI, § 6. Once the administrators of a pension plan exercise their powers under the Plan, courts will not overturn their decision unless the plaintiff proves by a fair preponderance of the credible evidence that their decision is arbitrary and capricious, the product of bad faith, or not supported by substantial evidence. *See Haeberle v. Board of Trustees*, 624 F.2d 1132, 1136 n.6 (2d Cir. 1980); *Hicks v. Pacific Maritime Ass'n*, 567 F.2d 355 (9th Cir. 1978); *Phillips v. Kennedy*, 542 F.2d 52, 55 (8th Cir. 1976);

*Lazur v. United Mine Workers of America*, 471 F.Supp. 114 (D.D.C.1979); *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund*, 432 F.Supp. 697 (E.D.Mo. 1977), *aff'd*, 572 F.2d 1208 (8th Cir. 1978). Therefore, the administrators of a pension plan may exercise their discretion in a manner consistent with their fiduciary responsibility to the beneficiaries and within the limits of the "principles of fundamental fairness." *Valle v. Joint Plumbing Industries Board* (Local 2, U.A.), *supra*, 623 F.2d at 203.[23]

■ Plaintiff first contends that the Committee's decision to delay his normal retirement date based upon his misrepresentation of his age is arbitrary and capricious. Plaintiff argues that the misrepresentation was immaterial since New York law at that time prohibited employment discrimination on the basis of age, and therefore Local 810 and the Plan could not have legally treated plaintiff differently had they known his true age. Plaintiff, however, misstates the interests at issue. Although Local 810 may not have been legally able to deny plaintiff employment on the basis of his age, the administrators of the Plan were entitled to know his true age and therefore the date he would become eligible for benefits for the purpose of planning the future financial condition of the Plan. Plaintiff produced no evidence to contradict the opinion of the Plan's actuary that a misrepresentation of age in a Plan of this size is significant.[24] Accordingly, the

23. In *Valle*, an action brought under section 302(e) of the National Labor Relations Act, 29 U.S.C. § 186(e), several pension plan participants challenged the trust administrators' decision finding them ineligible for benefits based upon amendments to the plan's eligibility requirements. Although finding that the amendments themselves were not arbitrary and capricious, the Second Circuit held that their application to these individuals was arbitrary and capricious since the administrators never notified the participants of the amendments to the eligibility requirements, which stripped them of their right to benefits, or fully explained how the participants could remedy their ineligibility. The Court found that such conduct was a breach of the administrators' fiduciary responsibility. *Id.* at 204. The present action is dis-

tinguishable from *Valle* since plaintiff does not contend that the Plan was amended without his knowledge but rather challenges the Committee's interpretation of the provisions of the Plan.

24. The Court is unimpressed by plaintiff's argument that he relied on defendant's representation that the Plan's actuary would be called as a witness and therefore plaintiff did not subpoena him. *See* Plaintiff's Post-Trial Memorandum at 10. Plaintiff could have called the Plan's actuary as a witness or obtained its own expert witness. Plaintiff, however, chose to submit no evidence which called into question the actuarial soundness of the Committee's decisions concerning the computation of plaintiff's benefits.

Court concludes that the misrepresentation was material.

■ Plaintiff next contends that the Committee was not empowered by the Plan to delay his normal retirement date on the basis of his age misrepresentation, relying upon Article VI, § 5, of the Restated Plan which provides that the Committee cannot add to, subtract from or change the terms of the Plan. Section 6 of Article VI of the Restated Plan, however, authorizes the Committee to adopt such rules as it deems necessary or appropriate and permits the Committee to rely upon information furnished by the Plan's actuary in calculating benefits. Therefore, the Court concludes that the Committee did not exceed its power under the Plan by adopting the actuary's recommendation to hold plaintiff to the age stated at the time he commenced employment when computing his benefits.[25] Moreover, the Court notes that Article IV, § 12, of the Restated Plan, which authorizes the complete denial of benefits based upon misrepresentations in applications for benefits upon which the Committee relies, demonstrates an intent on the part of the Plan's drafters to protect the Plan's financial integrity from the harmful effects of such misrepresentation, although that section is inapplicable to misrepresentations at the time of initial employment. Thus, the Court finds the Committee's decision to be consistent with the Plan's purpose and will not disturb it.

As his second ground for overturning the Plan's computation of his benefits, plaintiff argues that the Committee's decision to compute his benefits on the basis of that portion of his 1969 salary allocated to and paid by Local 810 rather than his gross 1969 salary from the Payroll Account is arbitrary and capricious. As was previously noted, Article II, § 1(p), of the Restated Plan defines "compensation" as salary paid to the participant by Local 810 for personal services rendered during the period of service. Therefore, the Plan formula for computing benefits calls for the use of plaintiff's 1969 salary paid by Local 810 for services rendered. Plaintiff argues, however, that he was solely the employee of Local 810 during the entire period of his employment. He characterizes contributions made to the Payroll Account by the other organizations as payment to Local 810 for their purchase of plaintiff's services, but he contends that they did not have the requisite control over his activities to be considered his employers.

■ The evidence presented at trial, however, merely establishes that plaintiff was hired by Milton Silverman, who was then president of Local 810 as well as administrator of the Pension and Welfare Funds. Thereafter, Milton Silverman, and later his son, Dennis Silverman, was plaintiff's immediate superior and directed him to perform accounting services for Local 810, the Pension and Welfare Funds, Local 1614 as well as the Medical and Dental plans. In effect, defendant contends that all of these entities were plaintiff's employers and that plaintiff's nominal employer, the Payroll Account, was nothing more than a "bookkeeping conduit" established for tax purposes and the sake of convenience. While it is clear that such a "bookkeeping" device could lead an ordinary employee to believe that his entire salary was being paid by Local 810 and that therefore his pension would be computed on the basis of his gross 1969 salary from the Payroll Account, plaintiff was no ordinary employee. Plaintiff, as bookkeeper, was well aware that all of these organizations contributed to the Payroll Account to pay his salary and that therefore his 1969 salary *paid by Local 810*, as required by the Plan for purposes of computing his pension benefits, was not $13,500 but $3,620. Since the Plan specifically limits the computation of benefits to salary received as compensation for services rendered to Local 810, plaintiff

**25.** Similarly, the Court will not disturb the Committee's adoption of the actuary's practice of excluding service credit for a month of partial employment when calculating plaintiff's years of credited service since plaintiff produced no evidence that this is not an accepted actuarial practice.

should not have assumed that his entire 1969 salary from all the entities would be the basis for his pension benefits.

■ Moreover, plaintiff has failed to demonstrate that defendant singled him out for this treatment under the Plan. The evidence presented at trial shows that the Plan mistakenly computed benefits on the basis of gross 1969 salary from the Payroll Account only in the Leonard and Hoffman cases and that since discovering the error the Plan has sought to correct it. The Court notes that ERISA requires fiduciaries of a pension plan to exercise their duties in accordance with the provisions of the plan. 29 U.S.C. § 1104(a)(1)(D). In this case, the Plan authorizes the Committee to interpret the provisions of the Plan and the Plan itself states that benefits shall be computed on the basis of salary paid by Local 810. Moreover, Article VI, § 5, of the Restated Plan provides that the Committee cannot waive or fail to apply any requirement for eligibility under the Plan and Article VI, § 6, provides that the Committee is entitled to rely on information received from the employer in calculating benefits. The Court therefore concludes that the Committee's past errors in computing benefits should not limit its power to interpret the Plan and award benefits in accordance with its provisions.[26] *See Lazur v. United Mine Workers of America, supra,* 471 F.Supp. at 115–16. Although plaintiff's employment status *vis-à-vis* the related organizations which paid his salary through payments to the Payroll Account is susceptible to more

than one interpretation and indeed such payments could be construed as compensating Local 810 for his services, the Committee instead found that plaintiff was employed by the other organizations as well. Since plaintiff was aware of the allocation of his salary among these organizations, the Committee's decision cannot be considered unexpected or fundamentally unfair to him. While the evidence before the Court may well support either interpretation of plaintiff's employment status, the Court must apply a limited standard of review. Since plaintiff has not sustained his burden of proving that the Committee's computation of his benefits or its interpretation of the provisions of the Plan is arbitrary and capricious, the product of bad faith or unsupported by substantial evidence, the Committee's computation of plaintiff's benefits under the Plan must be upheld.

## CONCLUSION

In accordance with the foregoing, the Court finds for the defendant. The Court concludes that plaintiff is entitled to monthly pension benefits in the amount of $111.61 commencing September 1, 1981 or the actuarial equivalent of that figure to commence at an earlier date selected by plaintiff. Under the circumstances, the Court declines to award plaintiff interest or attorney's fees.

These are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a). The Clerk of the Court is directed to pre-

---

**26.** Similarly, plaintiff cannot rely upon an estoppel theory for relief in this action: "The principle of estoppel permits recovery when 'a representation of fact made to a party who relies thereon with the right to so rely may not be denied by the party making the representation if such denial would result in injury or damage to the relying party.'" *Haeberle v. Board of Trustees, supra,* 624 F.2d at 1139 (quoting 1 *Williston on Contracts,* § 139 at 600 (3d ed. 1957)). Plaintiff has not shown a misrepresentation upon which he had the right to rely. There was no evidence presented that plaintiff was told that his benefits would be computed on the basis of his gross 1969 salary from the Payroll Account or that he was solely the employee of Local 810. Similarly, he had no right to rely on the Plan's erroneous compu-

tation of Leonard and Hoffman's benefits. Plaintiff, as the Court has noted, knew that he was being paid by a group of entities, that he was hired by a man who was an executive in most of these entities and that the Plan's benefits were computed on the basis of his 1969 salary paid by Local 810. Therefore, recognizing that courts have been reluctant to apply the doctrine of estoppel since "'[t]he actuarial soundness of pension funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan,'" *id.* (quoting *Phillips v. Kennedy, supra,* 542 F.2d at 55 n.8), the Court concludes that the doctrine is inapplicable.

pare and enter Judgment dismissing the complaint.

SO ORDERED.